## MAUD E. DESCHAMP v. CHARLES P. MEYERS COMPANY.[1]

January 19, 1923.

No. 23,150.

**Landlord and tenant—acceptance of offer conditioned on approval of attorney.**

The evidence showed at most that defendant offered to give plaintiff a lease for which she had been negotiating and that she accepted the offer conditionally, the condition being the approval by her attorney of the form of the proposed lease and a rider attached thereto. Until such approval was given, neither party was bound and either might withdraw, and plaintiff might recover money she had deposited with defendant on account of the proposed lease. There was no error in directing a verdict in her favor for the amount so deposited.

Action in the district court for St. Louis county to recover $600 for money had and received. The case was tried before Magney, J., who when plaintiff rested and at the close of the testimony denied defendant's motions for a directed verdict and directed a verdict in favor of plaintiff. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment

[1]Reported in 191 N. W. 817.

entered pursuant to the verdict, defendant appealed.    Affirmed.

*Washburn, Bailey & Mitchell*, for appellant.

*McManus & Morgan*, for respondent.

LEES, C.

Appeal from a judgment for plaintiff, after a directed verdict in her favor, in an action for money had and received.

From May 1 to September 16, 1921, plaintiff occupied the second floor of a store building in the city of Duluth as the tenant of defendant. On September 16 she was adjudicated a bankrupt and that fact terminated the lease. The rent for the month of August and the first 16 days of September was not paid. Defendant entered into possession and received some rents from other tenants. Plaintiff had installed store fixtures, but had not paid for them. They were covered by a chattel mortgage, and mechanics' liens had been filed on the building by persons who had furnished the fixtures. In November, 1921, she applied to defendant for a new lease. Defendant refused to deal with her unless the liens were discharged. On November 21 she deposited $600 with the defendant and agreed to add $150 thereto if defendant would get a release of the liens for $750 on or before December 1. If this could not be done, defendant was to return the money, but, if it was successful and plaintiff made the additional payment of $150, she was to have a new lease. A written memorandum of the terms of the agreement was prepared and signed and a copy delivered to plaintiff. On November 30 Charles P. Meyers, president and managing director of the defendant, summoned plaintiff to his office. What occurred there was related by plaintiff, by Mrs. Keenan, a friend who accompanied her and by Mr. Meyers. The two women testified that Mr. Meyers said he had not been able to settle with the lien claimants and was going to contest the liens; that, at his request, plaintiff returned her copy of the memorandum and he destroyed it; that she remonstrated, but he assured her he would give her another receipt, giving as a reason for his act a fear on his part that if the paper fell into other hands it might cause trouble in a contest over the liens; that plaintiff asked for the $600 she had deposited, and was told that

she would be given a lease. A new lease was drawn up in duplicate, but was never signed. Plaintiff demurred because no provision was made for the removal of the fixtures when the term of the lease expired. To meet her objection, Mr. Meyers prepared a rider to be attached to the lease. Plaintiff declined to take the lease until she had submitted it to her lawyer for his approval, and again asked for the return of her money. Mr. Meyers refused to return it, but promised to do so if the lease was not satisfactory. Plaintiff insisted on getting a receipt for the money and Mr. Meyers wrote one, reading as follows:

"$600.                    Duluth, Minn., November 30, 1921

"Received from Maud Deschamp six hundred dollars to apply on back rents for 2nd floor of number 113 W. Superior Street and hereby agree that if she pays the sum of ($525) five hundred twenty-five dollars in cash on or before December 15th, 1921, will be payment in full for rent for said premises to March 1st, 1922.

                                        "Chas. P. Meyers."

Noticing the reference to back rent, plaintiff refused to accept the receipt, insisting that she owed no rent, but Mr. Meyers refused to give her another receipt. She finally left the office, and, on going out, picked up the receipt and took it with her, because she wanted something to show that defendant had her money. She took the receipt and the new lease to her attorney. His advice to her was not disclosed, but she did not sign the lease. On December 12 she returned the lease and receipt and demanded the money. Her demand was refused and thereupon she brought this action.

The foregoing is a condensed statement of facts based on the testimony of plaintiff and Mrs. Keenan. Mr. Meyers' testimony conflicts with theirs in several particulars. He does not dispute plaintiff until she comes to the point in her narrative which has to do with the occurrences on November 30. With reference thereto, he testified that he told her it would take $1,125 to settle with the lien claimants; that if she would pay that amount defendant would give her a lease and fight the liens; that he had a new lease prepared and she compared it with the old one and found no fault with its

terms; that he told her he did not want the receipt of November 21 to be "out," and she gave it to him and he tore it up; that he told her the money she had deposited would be applied to pay rent instead of the lien claims; that a rider and the new lease were given to her to take to her attorney "to see if that rider would protect her in moving the fixtures if she moved out;" that she was satisfied with the lease, but wanted to make sure that the rider gave her the right to take out the fixtures, and took the papers away to submit them to her attorney. It is evident from Mr. Meyers' testimony that what he was aiming at was to recoup defendant's loss of rent from August 1 to December 1, a loss which he could not legally compel plaintiff to make good. When asked why he kept the money, he answered:

"We made this new agreement to hold this back and make up some of the rents that we had lost. * * * She was going to give us $1,125 for to get this lease made out. * * * We wanted to apply that (the $600 deposit) on behalf of the rental and on the expenses in order to leave her to come in there to get the premises; otherwise we could not do business with her."

On this appeal, defendant's position is that the receipt obligated it to give plaintiff a lease, on terms which had been agreed upon and were satisfactory to her, if she elected to call for the lease on or before December 15 and made an additional payment of $525; that she paid $600 for this option and forfeited the money by refusing to take the lease offered to her.

The question before us is whether there was sufficient evidence to warrant a jury in finding that the minds of the parties met upon the terms of a new lease or on an option for a lease. It must be conceded that, if there was such a meeting of minds, it was through no fault of the defendant that plaintiff did not get the lease, and hence she would not be entitled to recover the money deposited. Sennett v. Shehan, 27 Minn. 328, 7 N. W. 266; McKinney v. Harvie, 38 Minn. 18, 35 N. W. 668, 8 Am. St. 640. But, if there was no such meeting of minds, plaintiff was clearly entitled to the return of the money.

It is quite clear that plaintiff would have accepted the new lease if she had been certain that it gave her the right to remove the fixtures. It is equally clear that she declined to assent to the new arrangement until her attorney assured her that the rider covered the point she had in mind. Viewing the evidence in the light most favorable to defendant, there was at most a conditional acceptance of an offer, not to become effectual until the happening of a future event. There may be such an acceptance. Professor Williston says that an acceptance of that nature is so to speak one in escrow. It is not to take effect until the future. In the meantime neither party is bound and either may withdraw. 1 Williston, Contracts, § 51a. We are of the opinion that, until plaintiff's attorney gave his approval to the form of the lease and rider, defendant was not obligated to give plaintiff a lease. There is nothing in the record even remotely tending to show that plaintiff understood she was buying a 15-day option for a lease and paying $600 for it. No jury could find that defendant was justified in retaining the money on this theory.

We conclude that if defendant had been so fortunate as to be able to convince the jury that it was justified in its refusal to return the money on either of the theories it advances, the verdict could not stand. Plaintiff was, therefore, entitled to a directed verdict, and the judgment is accordingly affirmed.